Filed 11/16/23  In re Phoenix D. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Phoenix D. et al., <br><br> Persons Coming Under the Juvenile Court Law. | B324357 <br><br> (Los Angeles County Super. Ct. No. 22CCJP01546A-D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> D.P. and G.D., <br><br> Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Pete R. Navarro, Referee.  Affirmed in part and remanded in part.

Patricia K. Saucier, by appointment of the Court of Appeal, for Defendant and Appellant D.P.

Paul A. Swiller, by appointment of the Court of Appeal, for Defendant and Appellant G.D.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Father and mother appeal from the juvenile court's orders asserting dependency jurisdiction over four children. They allege the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) because it did not ask extended family members whether they had Native American ancestry. They ask us to remand the matter for compliance with ICWA's inquiry mandates. DCFS does not oppose remand for that purpose.

Father also challenges the jurisdictional findings that the children were at risk due to his history of substance abuse and mental health issues.

We conditionally affirm the court's orders asserting dependency jurisdiction and remand the case for the limited purpose of ensuring compliance with ICWA.

As the parties are familiar with the facts and procedural history of the case, we do not restate those details in full here. Below, we discuss only the facts and history as needed to resolve—and provide context for—the issues presented on appeal.

## DISCUSSION

A.    *Jurisdictional Findings*

1.    *Justiciability*

G.D. (father) challenges the jurisdictional findings made by the juvenile court as to the four children who are the subject of this action. No one has

challenged the jurisdictional findings against D.P. (mother). Father acknowledges the juvenile court would have jurisdiction over the children regardless of the outcome of father's appeal of the jurisdictional findings against him. Father requests that we exercise our discretion to consider his appeal on its merits as his status as an "offending" parent could have consequences in future proceedings concerning his custody of the children. DCFS does not address this issue in its briefing and instead addresses the merits of father's arguments concerning the jurisdictional findings against him.

"An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1490.) In dependency cases, our Supreme Court has set forth several factors that may be considered in deciding whether to review jurisdictional findings in an otherwise moot appeal. (*In re D.P.* (2023) 14 Cal.5th 266, 283, 285–286 (*D.P.*).) These factors include whether the finding "'could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or . . . "could have other consequences for [the appellant], beyond jurisdiction."'" (*Id.* at p. 283; see also *In re J.K.* (2009) 174 Cal.App.4th 1426, 1431–1432 [holding the Court of Appeal has discretion to consider an appeal of jurisdictional findings where they could impact future proceedings].) Other factors include whether the jurisdictional finding is based on particularly pernicious or stigmatizing conduct and the reason why the appeal became moot. (*D.P.*, *supra*, 14 Cal.5th at pp. 285–286.) "The factors above are not exhaustive, and no single factor is necessarily dispositive of whether a court should exercise discretionary review of a moot appeal." (*Id.* at p. 286.)

As we find the jurisdictional findings against father are stigmatizing and may play a role in future dependency proceedings, we will exercise our discretion to reach the merits of his appeal of the jurisdictional findings.

### 2. *Governing Principles and Standard of Review*

Under Welfare and Institutions Code[1] section 300, subdivision (b)(1), the juvenile court has jurisdiction over a child where there is a substantial risk the child will be harmed by certain enumerated conduct of a parent or guardian. This conduct includes "[t]he failure or inability of the child's parent or guardian to adequately supervise or protect the child" and "[t]he inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." (§ 300, subds. (b)(1)(A), (D).) "A jurisdictional finding under section 300, subdivision (b)(1), requires DCFS to demonstrate the following three elements by a preponderance of the evidence: (1) neglectful conduct, failure, or inability by the parent; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.)

"Although section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing [citations], the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child [citation]. The court may consider past events in deciding whether a child currently needs the court's protection. [Citation.] A parent's "'[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

4

continue.'" (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383–1384; see *In re T.V.* (2013) 217 Cal.App.4th 126, 133 ["[t]he focus of section 300 is on averting harm to the child"].) To establish a risk of harm at the time of the adjudication hearing, "[t]here must be some reason beyond mere speculation to believe the alleged conduct will recur." (*In re James R.* (2009) 176 Cal.App.4th 129, 136.)

We review jurisdictional findings for substantial evidence. (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992.) "Substantial evidence must be of ponderable legal significance. It is not synonymous with 'any' evidence. [Citation.] The evidence must be reasonable in nature, credible, and of solid value." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) "[W]e view the record in the light most favorable to the juvenile court's determinations, drawing all reasonable inferences from the evidence to support the juvenile court's findings and orders." (*In re Yolanda L.*, *supra*, 7 Cal.App.5th at p. 992.) The test is whether it was reasonable for the trier of fact to make the ruling in question in light of the whole record. (*Ibid.*)

"We do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." (*In re Dakota H.*, *supra*, 132 Cal.App.4th at p. 228.) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order." (*Ibid.*)

### 3.     *Counts b-3 and b-4*

Mother and father have four children. This action arose when twins Phr. D. and Pha. D. were born in April 2022 exhibiting symptoms of drug withdrawal. The section 300 petition included two counts asserted against father. Count b-3 alleged father has a history of substance abuse, including alcohol, which renders him incapable of providing regular care for the

children.  Count b-4 alleged father has a history of mental and emotional problems, including a diagnosis of post-traumatic stress disorder, which render him incapable of providing regular care for the children.  As these allegations are interrelated, we will discuss them together.

The record indicates father has had a long, ongoing history of anger and domestic abuse toward mother that has interfered with his ability to care for the children.  In 2013, father physically assaulted mother in front of the eldest child.  Father repeatedly struck her, threw her phone when she tried to call for help, and slammed her against a bedroom wall causing her to bleed from the head.  This incident led to the initiation of a dependency action which removed the eldest child from father's physical custody.  It was also followed a few months later by another incident of domestic violence against mother which resulted in father's arrest, conviction, and imprisonment.

While the record indicates father had taken some steps toward rehabilitation beginning in 2020, his mental and emotional issues continue to impact his ability to care for the children.  Shortly after the twins were born, the hospital revoked his visiting privileges because of repeated angry and threatening outbursts directed at mother while she was trying to feed one of the children in the neonatal intensive care unit (NICU).[2]  In July 2022, he told a social worker that he did not want to have anything to do with the case or any of the four children anymore because mother told him the twins were not his children.[3]

---

[2]     Father attempts to minimize the significance of these issues.  In an April 19, 2022, interview with DCFS, father claimed "that he and mother now successfully co-parent and there are no conflicts between them."  This statement was made less than ten days after the hospital revoked his access to the NICU where the twins were being treated.

[3]     Subsequent genetic testing indicated the twins are father's children.

Father himself traces the root of these problems to his mental health issues and history of substance abuse. The record indicates he now attends monthly individual therapy and has participated in two substance abuse programs. However, we note he also indicated he had stopped attending Alcoholics Anonymous meetings and did not currently have a sobriety sponsor. He also has been reluctant to take medication prescribed to him and chooses instead to self-medicate with marijuana. He claims the marijuana helps him sleep and "calms me down because I do have a temper." As set forth above, this reliance on marijuana to address his emotional issues has proven unsuccessful.

We find there is substantial evidence in the record that father's substance abuse is intertwined with his well-documented history of emotional and mental issues. These issues continue to manifest in ways that affect his ability to co-parent with mother and reliably care for the children. We therefore affirm the court's sustaining of counts b-3 and b-4 as to father.

### B.    *ICWA Compliance*

Mother and father contend DCFS and the juvenile court failed to inquire of extended family members as to whether the children are or may be Indian[4] children under ICWA. We agree.

Congress enacted ICWA "to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families and placement of such children 'in foster or adoptive homes which will reflect the unique values of Indian culture.'" (*In re*

---

[4]    "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

*Levi U.* (2000) 78 Cal.App.4th 191, 195; see also 25 U.S.C. § 1902.) "ICWA recognizes that "'the tribe has an interest in the child which is distinct from . . . the interest of the parents."'" (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 253.) Under state law, the juvenile court and DCFS have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child."[5] (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9, 11–12.) "The continuing duty to inquire whether a child is or may be an Indian child 'can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.'" (*In re Y.W.* (2021) 70 Cal.App.5th 542, 552.)

The duty of initial inquiry includes, but is not limited to, "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).) "Extended family members" include persons defined by law or custom of the Indian child's tribe, or in the absence of law or custom, adults who are the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (§ 224.1, subd. (c); 25 U.S.C. § 1903(2).)

DCFS does not dispute that it failed to fully discharge its duty of initial inquiry.

Mother and father denied any Native American ancestry. In May 2022, maternal grandmother indicated her family did not have Native American

---

[5] An "Indian child" is a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (§ 224.1, subds. (a), (b); 25 U.S.C. § 1903(4).)

ancestry. However, in June 2022, maternal grandmother informed DCFS that the maternal side of the family may have Native American ancestry. Specifically, she identified two relatives who she believed could have Cherokee or Choctaw ancestry. One of these individuals was the maternal great-grandmother who sometimes assisted the maternal grandmother in caring for the children. It is undisputed that DCFS did not make an ICWA inquiry of the maternal great-grandmother or the other extended family members it was aware of.

DCFS mailed ICWA notices to the Choctaw Nation of Oklahoma and the Cherokee Nation. Each responded that the children were not in its records and therefore were not an "Indian child" under ICWA. The juvenile court reviewed the tribes' responses and found ICWA did not apply. DCFS did not send notices or make further inquiries of two other Choctaw tribes or two other Cherokee tribes.

We conclude that because the juvenile court retains jurisdiction over the children and continues to have an ongoing duty to ensure ICWA compliance, the failure by DCFS to adequately discharge its duty of initial inquiry can be addressed by a conditional affirmance of the juvenile court's orders with directions to require DCFS to fulfill its duty. (See *In re Baby Girl M.* (2022) 83 Cal.App.5th 635, 639, fn. 2 ["We see no need to order any ICWA findings vacated because ICWA-related obligations are continuing duties; that means earlier ICWA-related findings are subject to change and no order vacating an earlier finding is necessary here"]; *In re A.C.* (2022) 75 Cal.App.5th 1009, 1018 [same].)

The parties identified several extended family members who have not been asked about possible Native American heritage, including the maternal great-grandmother, the maternal grandfather, the paternal grandfather, and

9

the maternal and paternal uncles.  On remand, DCFS shall attempt to inquire of any extended family members known to DCFS.

## DISPOSITION

The juvenile court's orders asserting dependency jurisdiction over the four children are conditionally affirmed.  The matter is remanded with instructions to DCFS and the juvenile court to conduct any necessary ICWA inquiry as to available relatives as soon as practicable.  DCFS and the court shall comply with additional ICWA requirements, including the notice requirements for all Cherokee and Choctaw tribes.  If the inquiry and notice do not reveal evidence of Native American heritage, the orders shall stand.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, J.

WE CONCUR:


CURREY, P. J.


MORI, J.